IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

**STATE OF TENNESSEE v. MICHAEL Q. RAY**

**Direct Appeal from the Criminal Court for Anderson County**
**No. 98CR248A   James B. Scott, Jr., Judge**

---

**No. E1999-00208-CCA-R3-CD - Decided**
**April 19, 2000**

---

Defendant pled guilty to one count of second degree murder. Defendant subsequently filed a motion to withdraw his guilty plea. The trial court denied the motion and Defendant challenges that denial. The judgment of the trial court is reversed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Remanded**

WOODALL, J., delivered the opinion of the court, in which RILEY, J., and WITT, J. joined.

David A. Stuart, Clinton, Tennessee, for the appellant, Michael Q. Ray.

Paul G. Summers, Attorney General and Reporter, Patricia C. Kussmann, Assistant Attorney General, James N. Ramsey, District Attorney General, and Janice G. Hicks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Defendant Michael Q. Ray was indicted by the Anderson County Grand Jury for first degree murder. Defendant subsequently pled guilty pursuant to a negotiated plea agreement to a charge of second degree murder. Shortly thereafter, Defendant filed a motion to withdraw his guilty plea, but the trial court subsequently denied the motion, imposed a sentence of twenty years, and entered judgment. Defendant challenges his conviction, raising the following issue: whether the trial court erred when it denied his motion to withdraw his guilty plea. After a review of the record, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

**BACKGROUND**

On April 5, 1999, Defendant petitioned the trial court to accept his guilty plea to a charge of second degree murder and the State petitioned the trial court to amend the indictment so that it would charge second degree murder rather than first degree murder. That same day, the trial court conducted a hearing in which Defendant and several other individuals entered guilty pleas partially en masse and partially individually. Initially, the trial court advised Defendant and the other

individuals collectively that they were presumed innocent and they had a right to a jury trial in which the State would have to establish their guilt beyond a reasonable doubt. The court then stated that if the members of the group had a jury trial, they would not have to testify, but they could do so if they chose. The court also told the members of the group that they could not appeal from a guilty plea, but if they were convicted in a jury trial, they could appeal their convictions and sentences and they would have a right to counsel on appeal.

After taking the plea of another individual, the trial court asked the prosecutor for the facts of Defendant's case. The prosecutor responded that the State would have shown that the victim had been shot five times, that Defendant was seen outside the victim's apartment at the time of the killing, that Defendant told two witnesses that he shot the victim, and that Defendant told the police that the victim owed him $250.00 for a cocaine purchase. At this point, the trial court questioned Defendant about his background and Defendant stated that he was nineteen years old and his prior criminal record consisted of one juvenile adjudication. When the court asked Defendant whether he was aware of the sentence he would receive, Defendant responded that he believed he would receive a sentence of twenty years at 30%. After a colloquy between the court and both attorneys about the fact that Defendant would be required to serve 100% of his sentence, the trial court advised Defendant to discuss his sentence with defense counsel and the court then took the pleas of several other individuals.

Following the disposition of the other cases, the trial court asked Defendant whether he realized that he would have to serve 100% of his sentence and Defendant responded that he did. The trial court then stated that it found that Defendant had entered his plea knowingly and voluntarily. The trial court also stated that it found that the amended indictment was acceptable.

On April 8, 1999, Defendant filed a motion to withdraw his guilty plea in which he alleged that his plea was not entered knowingly and voluntarily. On April 15, 1999, the trial court entered judgment in this case. On May 4, 1999, Defendant filed an amended motion to withdraw his guilty plea which alleged that the trial court had failed to advise him of certain rights.

The trial court conducted a hearing on Defendant's motion on May 17, 1999. During the hearing, defense counsel argued that the record did not indicate that Defendant had been advised of the nature of the charge, the minimum and maximum possible sentences, the right to counsel during trial, the privilege against self-incrimination, the right to confront and cross-examine witnesses, and the fact that he could be asked questions about the offense the answers to which could be used against him in a prosecution for perjury. The trial court then reviewed the transcript of the plea hearing and denied the motion after finding that it had "touched base on everything [Defendant] has in the way of a constitutional right."

**ANALYSIS**

Defendant contends that he should have been allowed to withdraw his guilty plea because the trial court failed to advise him of certain rights before it accepted the plea. The State agrees that Defendant should have been allowed to withdraw his guilty plea because the trial court failed to advise him of his rights.

**A.**

In order to satisfy constitutional standards, a guilty plea must be entered knowingly, voluntarily and intelligently. Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); Johnson v. State, 834 S.W.2d 922, 923 (Tenn. 1992). A defendant enters a knowing and voluntary plea when he or she understands the rights and circumstances involved and nevertheless chooses to waive or relinquish those rights. State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires that before the court may accept a guilty plea, the defendant must be advised of the privilege against compulsory self- incrimination, the right to a jury trial, and the right to confront the accusing witnesses. Boykin, 395 U.S. at 243, 89 S.Ct. at 1712.

In addition to the advice mandated by Boykin, the Tennessee Supreme Court has exercised "its supervisory power to insure that the courts of this State afford fairness and justice to defendants in criminal cases" by adopting additional requirements. See Mackey, 553 S.W.2d at 340. The supreme court held that before accepting a guilty plea, the trial court must personally inform the defendant of certain rights and make sure that the defendant understands those rights. Id. at 341. This information includes:

(1) The nature of the charge to which the plea is offered, and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and, if applicable, that a different or additional punishment may result by reason of his prior convictions or other factors which may be established in the present action after the entry of his plea; and

(2) If the defendant is not represented by an attorney, that he has a right to be represented by an attorney at every stage of the proceeding against him, and if necessary, one will be appointed to represent him; and

(3) That he has a right to plead not guilty or to persist in that plea if it has already been made, and, that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) That if he pleads guilty, there will not be a further trial of any kind except to determine the sentence so that by pleading guilty he waives the right to a trial; and

(5) That if he pleads guilty, the court or the state may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement, and, further, that, upon the sentencing hearing, evidence of any prior convictions may be presented to the judge or jury for their consideration in determining punishment.

Id. Further, the trial court must also determine that the plea is voluntary and that there is a factual basis for the plea. Id. In State v. McClintock, 732 S.W.2d 268 (Tenn.1987), the supreme court

added to the <u>Mackey</u> procedure the requirement that "a court accepting a guilty plea must make it clear to the defendant that the resulting judgment of conviction may be used in a subsequent proceeding to enhance the punishment for subsequent offenses." <u>Id.</u> at 273. Many of the above requirements have been included in Rule 11(c) of the Tennessee Rules of Criminal Procedure.

Absolute literal compliance with the above advice is not required and substantial compliance is sufficient. <u>State v. Neal</u>, 810 S.W.2d 131, 137 (Tenn. 1991), <u>overruled in part on other grounds</u>, <u>Blankenship v. State</u>, 897 S.W.2d 902 (Tenn. 1993). Substantial compliance requires expressing the sense of the substance of the required advice. <u>Neal</u>, 810 S.W.2d at 137.

Although the failure to advise a defendant of the above rights before accepting a guilty plea is error, the error is harmless if the defendant was in fact aware of the rights. <u>Johnson</u>, 834 S.W.2d at 926. The State has the burden of proving that the error was harmless. <u>Neal</u>, 810 S.W.2d at 139.

**B.**

Defendant essentially contends that the trial court failed to satisfy most of the <u>Boykin</u>, <u>Mackey</u>, and <u>McClintock</u> requirements when it accepted his guilty plea.

The record indicates that the trial court clearly informed Defendant that he had the right to a jury trial, he had the right to counsel at every stage of the proceedings, and that there would be no further trial if he pled guilty. In addition, the record indicates that the trial court ensured that there was a factual basis for the plea and the court also determined that the plea was voluntary and was not the result of force, threats, or promises. The trial court also made somewhat vague statements regarding Defendant's privilege against self-incrimination and his right to plead not guilty. However, we need not decide whether these statements were too vague to satisfy the <u>Boykin</u>, <u>Mackey</u>, and <u>McClintock</u> requirements because it is clear that the trial court completely failed to provide Defendant with other advice as required by those three cases.

The record indicates that although the trial court engaged in a discussion with Defendant about the sentence he would receive pursuant to the plea agreement, the court failed to advise Defendant of the possible maximum and minimum sentences that could be imposed for a second degree murder conviction. <u>See</u> <u>Mackey</u>, 553 S.W.2d at 341. In addition, the trial court did not provide Defendant with any information about the nature of the second degree murder offense that he was pleading guilty to. <u>See</u> <u>id.</u> Further, the trial court did not inform Defendant that if he pled guilty, he could be asked questions on the record and his answers could be used against him in a perjury prosecution. <u>See</u> <u>id.</u> Moreover, the trial court did not advise Defendant that if he pled guilty, his conviction could be used to enhance the sentences for future convictions. <u>See</u> <u>McClintock</u>, 732 S.W.2d at 273. Finally, the trial court did not advise Defendant that if he pled not guilty and proceeded to trial, he would have the right to confront and cross-examine the witnesses against him. <u>See</u> <u>Boykin</u>, 395 U.S. at 243, 89 S.Ct. at 1712; <u>Mackey</u>, 553 S.W.2d at 441.

It is true that Defendant's petition to plead guilty contains language indicating that he had been informed of the nature of the charge against him, the possible sentences, that he has a right to

"see and hear all witnesses against [him]," and had been informed of all other constitutional rights. However, the Tennessee Supreme Court has stated that such a petition can only fill the void created by the trial court's failure to provide the required information under the following circumstances:

> If a sworn petition to be allowed to plead guilty is filed by the defendant, setting out the fact of the defendant's knowledge of all of the facts required to be covered by the judge in the required dialogue, and there is evidence that he in fact was aware of the truth of the allegations of the petition from the testimony of an attorney or attorneys or other learned person who advised with him in complete detail regarding the contents of the petition, and the defendant testified on the record that he understood the contents of the petition that he had filed, when and if this is found by the court to be true then the error in not articulating the full required rights information and conviction consequences could be found to be harmless.

Neal, 810 S.W.2d at 139. In this case, there is no testimony in the record from Defendant, his attorney, or anyone else which indicates that Defendant was advised in detail of the contents of the petition and he understood the petition. Thus, the trial court's error in failing to provide the required information cannot be considered harmless.

## C.

The withdrawal of a guilty plea is governed by Rule 32(f) of the Tennessee Rules of Criminal Procedure, which states:

> A motion to withdraw a plea of guilty may be made upon a showing by the defendant of any fair and just reason only before sentence is imposed; but to correct manifest injustice, the court after sentence, but before the judgment becomes final, may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Tenn. R. Crim. P. 32(f). This Court has stated that:

> The rule creates two standards for determining whether an accused should be permitted to withdraw a plea of guilty. The proper standard to be applied by the trial court depends upon when the accused files the motion to withdraw the plea. When the motion is filed prior to the imposition of sentence, the standard to be applied is "a fair and just reason." When the motion is filed after the imposition of sentence, the standard to be applied is "manifest injustice."

State v. Turner, 919 S.W.2d 346, 354–55 (Tenn. Crim. App. 1995).

In this case, Defendant entered his guilty plea on April 5, 1999, and filed a motion to withdraw his plea on April 8, 1999. A review of the record indicates that during the plea hearing, the trial court explained the sentence Defendant would receive, made sure that Defendant understood the sentence, and ordered Defendant to be placed in custody to begin serving his sentence. While the trial court may not have used the most articulate language, the trial court did in fact impose sentence during the hearing on April 5, 1999. However, there is no dispute that Defendant filed the motion to withdraw his guilty plea before judgment became final, since the judgment was not entered until April 15, 1999. Thus, the "manifest injustice" standard is applicable in this case. We conclude that the trial court's failure to comply with the requirements of Boykin, Mackey, and McClintock resulted in a "manifest injustice" which entitled Defendant to withdraw his guilty plea.

<u>See</u> <u>id.</u> at 355 (stating that "[a] trial court may permit the withdrawal of a plea of guilty to prevent 'manifest injustice' when . . . the plea of guilty was not voluntarily, understandingly, or knowingly entered.").

## CONCLUSION

In conclusion, it is clear that the trial court failed to provide Defendant with all of the information required by <u>Boykin</u>, <u>Mackey</u>, and <u>McClintock</u>. Further, nothing in the record indicates that the nineteen-year-old Defendant, whose prior criminal record apparently consisted of one juvenile adjudication, was in fact aware of the information the trial court failed to provide him with. Accordingly, we REVERSE the judgment of the trial court and REMAND this matter for entry of an order setting aside Defendant's guilty plea and the resulting conviction and for further proceedings consistent with this opinion.